IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 04-10001-01-WEB |
| ) | |
| KEVIN L. SCHOENHALS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**Memorandum and Order**

This matter came before the court on April 29, 2005, for a hearing to determine whether Mr. Schoenhals should be remanded to a suitable facility on the ground that his continued release would create a substantial risk of bodily injury to another person or serious damage to property of another. *See* 18 U.S.C. § 4243(g). After hearing evidence presented by both sides, the court determined that Mr. Schoenhals's release would create such a risk, and the court orally ordered that Mr. Schoenhals be remanded to the custody of the Attorney General. This written memorandum will supplement the court's oral ruling.

I. *Background*.

On January 7, 2004, a one-count Indictment was filed against defendant Kevin L. Schoenhals charging him with unlawfully threatening to murder a federal agent in violation of 18 U.S.C. § 115(a)(1)(B). Doc. 8. On September 22, 2004, the court, based upon a stipulation of the parties and a report of a clinical psychologist, found that the defendant was not guilty of the offense by reason of insanity, and the

court ordered that an additional psychological examination be conducted to determine if the defendant's release would create a substantial risk of bodily injury to another. Doc. 21. Based on the results of the latter examination, the court found on November 30, 2004, that Mr. Schoenhals had shown by clear and convincing evidence his condition had improved to the extent he could be conditionally released under a prescribed regimen of care. Doc. 26. *See* 18 U.S.C. § 4243(f)(2).[1] The court noted that a report by Dr. Joseph R. Hertzler, Clinic Psychologist with Prairie View Mental Health Center, Newton, concluded that due to Mr. Schoenhals compliance with prescribed medication and ongoing mental health treatment, he was not currently dangerous to himself or anyone else, although Dr. Hertzler noted that the defendant had a history of questionable compliance and could become dangerous when not complying with his prescribed treatment. Dr. Hertzler reported that Mr. Schoenhals could reasonably be expected to remain in remission if he actively participated in follow-up treatment and complied with medication management, and he recommended outpatient follow-up as a condition of release including, at a minimum, regular appointments with the treating psychiatrist and community-based services to assure compliance. To satisfy the requirements of this recommendation, counsel for Mr. Schoenhals provided a letter from Dr. Lin Xu, staff psychiatrist with COMCARE Medical Services, Wichita, KS, which contained a proposed treatment plan for Mr. Schoenhals. That plan provided in part that the defendant would submit to psychiatric evaluation and follow-up treatment on a regular basis with Dr. Xu, including a prescribed regime of psycho tropic medication and blood tests to assure the defendant's compliance. Based on the evidence presented, the

---

[1] Both parties agreed that the court should direct that Mr. Schoenhals should be examined locally and that it should proceed under § 4243(g) to determine the conditions for the defendant's release without first returning Ms. Schoenhals to the custody of the Attorney General.

court concluded in its November 30th Order of Release that the defendant's release would not pose a substantial risk of bodily injury to another person if he were to comply with various specific conditions, including the following:

> Mr. Schoenhals shall comply with any comprehensive treatment plan, other mental health plans and supportive-type therapies as determined by COMCARE Medical Services, Wichita, KS and other mental health professionals treating Mr. Schoenhals. This would include voluntary admission to a local psychiatric hospital on an inpatient basis should it become necessary;
> Mr. Schoenhals will continue to be medication compliant and take prescribed medications as ordered and as may be adjusted by his treating psychiatrist in the community;
> Mr. Schoenhals shall abide by the standard conditions of supervision as approved by the U.S. Probation Office; and
> That the U.S. Probation Office assist in the supervision of Mr. Schoenhals, pursuant to 18 U.S.C. § 3603(8)(a) and § 3154(12)(a).

Doc. 26.

On April 22, 2005, the court received a Petition from the U.S. Probation Office alleging that Mr. Schoenhals had failed to comply with the treatment plan determined by Dr. Xu and COMCARE Medical Services. Based on that petition, the court directed that the defendant be brought before the court to show cause why the conditional order of release should not be revoked. At a status hearing on April 25, 2005, the court conferred with the parties and set the matter over for an evidentiary hearing on April 29, 2005. At the April 29th hearing, the court received documentary evidence and heard testimony from the following witnesses: Dr. Lin Xu, Nurse Practitioner Deborah Murphy, U.S. Probation Officer Chris McNeil, and defendant Kevin Schoenhals.

II. *Summary of Evidence and Court's Findings*.

Dr. Lin Xu, a psychiatrist with COMCARE, first saw Mr. Schoenhals back in 1998, when the defendant was admitted to St. Joe Hospital during a psychotic episode. She began treating him again following the court's order of November 29, 2004. Dr. Xu diagnosed Mr. Schoenhals as having schizoaffective disorder, and she prescribed psycho tropic medication including Depakote. The defendant's symptoms included agitation, inability to sleep, fixed delusional beliefs, episodes of mania, and delusions and thoughts of grandeur. Dr. Xu initially saw the defendant about once a week after his release in December of 2004, but his sessions were gradually reduced as the defendant's symptoms improved. Several months later, Dr. Xu noted a relapse, with the defendant exhibiting symptoms including difficulty thinking and delusions of grandeur. She asked for a random blood test to see if the defendant was taking his medications, but the defendant could not be located for several days. When he was located and took a test, his serum levels of medication were on the low side but were within the therapeutic range. Dr. Xu believed the defendant likely had not been taking his medications and may have taken them just before being tested.

At some point in mid-April U.S. Probation Officer Chris McNeil received a call from an officer with the Kansas Highway Patrol & Capital Police regarding a message that had been left on a telephone answering machine. The officer believed the message had been intended for Governor Kathleen Sebelius. It was actually left on a telephone number one-digit removed from the Governor's phone line. The message, which was largely nonsensical ["Are you getta getta goin' fluffy fluffy or are you getta goin' fluffy fluffy now?"], included a reference to "Kathy" being "involved in extortion" and said she "better clean up her [act] real quick." The call was traced to the defendant's residence. Mr. McNeil heard the recorded

4

message and recognized the defendant's voice. Mr. McNeil subsequently spoke to Mr. Schoenhals about the message. Mr. Schoenhals admitted having tried to contact the Governor's office on several occasions, but said he had not left any message and did not make this call.

On April 20, 2005, Dr. Xu met with Mr. Schoenhals and noted he was very anxious and guarded and did not want to provide information. He was writing down everything Dr. Xu said and was exhibiting signs of paranoia. He was very angry at the government and was preoccupied. Dr. Xu concluded that Mr. Schoenhals could be a danger to himself or others and that he needed immediate hospitalization to become stable. She told Mr. Schoenhals that she wanted him to go to see psychiatrist Dr. Paul Murphy at the hospital. Mr. Schoenhals responded that he needed to go home to take care of some things and would then go. Dr. Xu told him that he needed to go to the hospital right away, but the defendant got upset and rushed out. He got in his car and left. Dr. Xu, believing the defendant was a danger to himself or others, filed an emergency court hold allowing the police to pick up the defendant and take him to the hospital.

According to Mr. Schoenhals' testimony, he left Dr. Xu's office because he "had a schedule" that he wanted to complete. He said that when Dr. Xu stood up, he considered their appointment concluded, and he did not understand that Dr. Xu wanted him to go to the hospital immediately. He also testified that he wanted his personal physician to examine him and was working on some court papers at home he wanted to finish before he went to the hospital.[2] He testified that he went to lunch after he left Dr. Xu's

---

[2] The motion to which Mr. Schoenhals referred was subsequently filed by him with the court. *See* Doc. 29. It bears a notarized signature dated April 21, 2005. The motion is largely incoherent but appears to argue that Mr. Schoenhals has been successfully treated and is no longer in need of treatment by COMCARE or supervision by the U.S. Probation Office. For the reasons indicated in this order, the motion (Doc. 29) is denied.

5

office, and later went to an Immediate Care Center at Wesley Hospital complaining of facial pain. He conceded that he did not tell the doctor at Immediate Care (who was not a psychiatrist) anything about his history of mental illness or the incident involving Dr. Xu, but in his testimony he stated that any medical doctor should have been able to determine if he needed immediate psychiatric care. The defendant testified that he thought he needed some sleep before he went to the hospital, so he went home after visiting Immediate Care. He testified that he tried to reach Dr. Murphy to set up an appointment but was unable to do so. He contacted his regular physician, an osteopath, and was able to make an appointment for April 26th. The defendant testified he was subsequently sleeping at his apartment when he heard a knock on the door. He testified that he thought someone was coming to visit him, so he got up and went to take a shower. When he got out of the shower, he saw two Wichita police officers standing in his bedroom. The officers took him in handcuffs to Good Shepherd Hospital.

At Good Shepherd Hospital, Nurse Practitioner Debra Murphy saw Mr. Schoenhals on April 22nd. As Ms. Murphy took the defendant's personal history, she noticed he was very guarded about giving information. She had already received some information about the defendant's recent behavior from Dr. Xu and/or from COMCARE. Ms. Murphy noted that the defendant was agitated and disheveled, and looked like he had not slept well or had slept in his clothes. When Ms. Murphy asked if he were taking his medications, Mr. Schoenhals responded that he did not need to take medications anymore and that he had discharged Dr. Xu as his physician. He said he was going to see his own doctor, at Immediate Care, but he could not provide the name of the doctor. Ms. Murphy knew there was no psychiatrist on staff at the Immediate Care facility. When Ms. Murphy asked the defendant if he had made any threatening phone calls, he angrily denied having done so and demanded to know where she got that information. The

defendant got up out of his chair and came towards Ms. Murphy, getting within a foot or so of her, repeatedly and loudly demanding to know who was making these accusations about a threatening call. Although Mr. Schoenhals made no verbal threat, Ms. Murphy, an experienced practitioner, found his behavior intimidating and threatening. She testified that he could not be reasoned with. She backed out of the interview room and called the U.S. Probation Office. In Ms. Murphy's opinion, the defendant was delusional and was a danger to other people.

This and the other evidence presented makes clear that Mr. Schoenhals has failed to comply with the treatment plan determined by Dr. Xu and COMCARE. The court finds unpersuasive Mr. Schoenhals' explanation that he simply did not understand Dr. Xu or that he was merely attempting to comply with her directive to go to the hospital. The evidence shows that Mr. Schoenhals was resistant to Dr. Xu's determination as to what treatment he needed and that he refused to comply with her directive to go to the hospital. As noted by Ms. Murphy at Good Shepherd Hospital, the defendant told her that he had discharged Dr. Xu as his physician. The evidence clearly establishes that the defendant violated the conditions imposed in the court's prior order of release. This may well have been due in part to Mr. Schoenhals's failure to consistently take his prescribed medications, but whatever the reason, Mr. Schoenhals' behavior demonstrates that he is currently unable or unwilling to comply with the treatment plan that had been adopted to insure that his mental health remains stable. The uncontroverted evidence before the court is that the mental health professionals who saw the defendant during this period concluded he was delusional and unstable and was a danger to himself and/or others due to his unstable condition. Mr. Schoenhals' actions show a lack of control on his part and they also demonstrate that he has a misperception that he can determine his own course of medical treatment.

III. *Conclusion*.

The court finds that in light of Mr. Schoenhals' failure to comply with his prescribed regimen of care and treatment and his present mental disease, his continued release would pose a substantial risk of bodily injury to another person or serious damage to property of another. Accordingly, the conditional order of release previously entered by the court (Doc. 26) is hereby REVOKED. *See* 18 U.S.C. § 4243(g).

The court further orders that Ms. Schoenhals be, and is hereby, committed to the custody of the Attorney General of the United States in accordance with 18 U.S.C. § 4243(e). Should the director of a facility in which Mr. Schoenhals is hospitalized determine in the future that he has recovered from his mental disease to such an extent that his release or conditional release under a prescribed regimen of care would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, he or she shall promptly file a certificate to that effect with the clerk of this court. *See* 18 U.S.C. § 4243(f).

IT IS SO ORDERED this  4th  Day of May, 2005, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge